FILED
2005 Apr-08 PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EVANSTON INSURANCE COMPANY

    Plaintiff,

v.

PROFESSIONAL UNDERWRITERS LIABILITY
INSURANCE COMPANY

    Defendant.

## COMPLAINT

### Preliminary Statement

This suit is filed by the plaintiff insurer seeking contribution from the defendant insurer. This case is closely related to *Evanston Insurance Company v. The Doctors Company*, CV-03-H-2788-S, now pending before The Honorable James H. Hancock.

### Parties and Jurisdiction

1. Plaintiff, Evanston Insurance Company ("Evanston"), is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

2. Defendant, Professional Underwriters Liability Insurance Company ("PULIC"), is a corporation organized under the laws of Utah with its principal place of business in California.

3. PULIC maintains systematic, continuous, and regular contacts with the State of Alabama and the Northern District of Alabama. It derives revenues from its dealings with Alabama residents and businesses, including residents and businesses within the Northern District of Alabama. PULIC is subject to personal jurisdiction in Alabama, and thus resides in the Northern District of Alabama, making venue proper in this District. 28 U.S.C. §1391(a)(1).

4. A substantial part of the events and omissions giving rise to the claims occurred in the Northern District of Alabama, making venue proper in this District. 28 U.S.C. §1391(a)(2).

EXHIBIT "3"

5. This court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 since the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

### Facts

6. Southern Springs Healthcare Facility ("Southern Springs") is a nursing home in Bullock County, Alabama.

7. PULIC provided liability coverage to Southern Springs from October 15, 1999 to February 7, 2000 at 12:01 a.m. A copy of the PULIC policy is attached as Exhibit A.

8. While PULIC is the insurer that actually issued a policy to Southern Springs, The Doctors Company or The Doctors Management Company acted as PULIC's agent and attorney-in-fact and performed the management and administrative duties of PULIC. The Doctors Company or The Doctors Management Company held itself out as the insurer of Southern Springs and the issuer of the Southern Springs insurance policy. PULIC and its agents and attorneys-in-fact are referred to collectively as PULIC.

9. Evanston provided liability coverage to Southern Springs under a "claims-made" liability insurance policy with a claim period that commenced on February 7, 2000 at 12:01 a.m. A copy of the Evanston policy is attached as Exhibit B.

10. Mary Glaze became a resident of Southern Springs nursing home in July of 1999 at the age of 75.

11. While Ms. Glaze was a resident, and during the PULIC policy period, she suffered from non-healing or slow-healing pressure sores on her left foot and poor lower extremity circulation.

12. She developed Stage II[1] bed sores to her left outer ankle, left bunion area, and left outer foot no later than October of 1999.

13. By December of 1999, some of her bed sores worsened, advancing from Stage II to Stage IV[2].

---

[1] Stage II is partial thickness skin loss involving the epidermis and/or dermis. http://www.decubitus.org/insult/insult.html.

[2] Stage IV is full thickness skin loss with extensive destruction, tissue necrosis or damage to muscle, bone, or supporting structures. http://www.decubitus.org/insult/insult.html.

2

14. On January 23, 2000, the Southern Springs nursing staff could not detect a pulse in Ms. Glaze's left foot. Southern Springs failed to notify a physician of this development on January 23, 2000. In fact, Southern Springs did not notify a physician at any time prior to 12:01 a.m. February 7, 2000, the day the PULIC policy terminated.

15. On February 7, 2000, after the PULIC policy terminated, the Southern Springs nursing staff again could not detect a pulse in Ms. Glaze's left foot. However, on this occasion, Southern Springs contacted a physician who admitted Ms. Glaze to local hospital.

16. After an eight day hospitalization, lasting from February 10 through February 18, 2000, Glaze returned to the nursing home. Her left foot was black with flaky skin and was cool to the touch.

17. On February 23, 2000, Southern Springs referred Ms. Glaze to a physician for evaluation of her left foot sores. The physician recommended that Glaze undergo an above-the-knee or below-the-knee amputation to resolve three non-healing sores on her left foot. The physician concluded there was little to offer Ms. Glaze except amputation.

18. On March 2, 2000, Ms. Glaze underwent a left leg, above-the-knee amputation.

19. Mary Glaze sued Southern Springs on January 25, 2002 in the Circuit Court of Bullock County, Alabama on a claim of negligence "beginning in February 2000." The complaint alleged that "by, no earlier than, February 1, 2000, the plaintiff had developed pressure sores and poor circulation which ultimately led to the amputation of her left leg."

20. The complaint alleged, among other things, negligent failure to monitor the plaintiff's condition, to diagnose and treat plaintiff's bed sores and poor circulation, and to move and reposition the plaintiff so as to improve circulation and reduce the likelihood of bed sores.

21. Her allegation of negligence occurring as early as February 2000 triggered coverage under the PULIC policy.

22. The complaint, filed January 25, 2002, triggered coverage under the Evanston policy since the claim was made during the policy reporting period.

23. PULIC and Evanston hired an attorney to defend their insured and agreed to share the costs of defense equally.

24. Evanston, during the defense of the lawsuit, had duties to its insured arising under its insurance contract.

3

25. During the course of the lawsuit, Glaze offered to settle for $460,000, which was recommended by counsel for the insured.

26. Evanston requested that PULIC contribute to the settlement.

27. PULIC and Evanston attempted to agree on their respective contribution to the settlement of the lawsuit.

28. PULIC only offered to contribute a small amount, contending that it had a limited obligation to contribute to the settlement under its policy.

29. The insured requested that PULIC disclose its policy to Evanston, but PULIC adamantly refused.

30. Evanston requested that PULIC disclose its policy to Evanston, but PULIC adamantly refused.

31. PULIC's refusal to provide a copy of its insurance policy to Evanston prevented an analysis of Evanston's duty to its insured by virtue of the "other insurance" clause within the Evanston policy as compared to the "other insurance" clause within the PULIC policy.

32. Evanston made demand upon PULIC for contribution and advised PULIC that Evanston would file a lawsuit against PULIC for the entire amount of any settlement paid, or some lesser contribution depending on the language of the PULIC policy if it were disclosed.

33. Evanston, having made demand on PULIC and having advised PULIC of its intention to file suit to obtain reimbursement of the settlement monies paid or contribution to the settlement, determined to settle the lawsuit using its funds and to thereafter sue PULIC.

34. Counsel for the insured provided a copy of the proposed Settlement Agreement and General Release to both PULIC and Evanston.

35. Both PULIC and Evanston approved the terms and conditions of the Settlement Agreement and General Release.

36. On information and belief it is alleged that PULIC did not reserve its rights under its occurrence policy in defending the insured.

37. Evanston paid $460,000 to Glaze and her attorney to settle the lawsuit.

38. After Evanston paid the settlement monies and sued The Doctors Company, PULIC disclosed its policy and claimed, for the first time, that it was the insurer of Southern

Springs. The policy, which is attached as Exhibit A, contains a "pro rata" other insurance clause.

> **Method of Sharing.**
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance, or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

39. The Evanston policy, which is attached as Exhibit B, contains an "excess" other insurance clause.

> **Other Insurance:** This insurance shall be in excess of the amount of the applicable deductible of this policy and any other valid and collectable insurance available to the Insured, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.

40. As between the PULIC policy, with a pro rata clause, and the Evanston policy, with an excess clause, PULIC is the primary insurer and Evanston is the excess insurer. See State Farm Fire & Cas. Co. v. Hartford Acc. & Indem. Co., 347 So.2d 389 (Ala.1977)(policy with pro-rata clause must exhaust its limits before any payment is required by an excess policy); State Farm Mut. Auto. Ins. Co. v. Auto Owners Ins. Co., 252 So. 2d 631 (Ala. 1971)(competing pro rata and excess clauses found primary and excess, respectively); Continental Nat'l Am. Group v. Burleson, 220 So. 2d 611 (Ala. 1969)(policy with pro-rata clause must exhaust its limits before any payment is required by an excess policy).

41. Under Alabama law, PULIC, as the primary insurer, is obligated to reimburse Evanston, the excess insurer, for the monies paid by Evanston to settle the Glaze litigation.

42. Also, Evanston has been required to pay attorneys to attempt to obtain the policy, attempt to analyze its significance, attempt to negotiate over contribution, and to obtain redress from PULIC. PULIC is obligated, under an exception to the American rule that each party bears its own attorney's fees, to pay Evanston's attorney's fees since it was a foreseeable consequence of the actions of PULIC that Evanston would be required to obtain lawyers and to file this suit in order to protect its insured and its rights with respect to its insured.

5

## Demand for Judgment

43. Evanston demands judgment against PULIC for compensatory damages in the amount of $460,000, plus interest, costs, and reasonable attorney's fees.

s/Lewis W. Page, Jr.
LEWIS W. PAGE, JR.
ASB-2860-P46L
Attorney for Plaintiff
Page Parks, LLC
1933 Building, Suite 100
1933 Richard Arrington, Jr. Blvd. South
Birmingham, AL 35209-1262
Telephone: 205-939-3900
Fax: 205-939-1300 (Facsimile)
E-mail: lewis.page@pagelaw.com

s/Will J. Parks, III
WILL J. PARKS, III
ASB-9748-K54W
Attorney for Plaintiff
Page Parks, LLC
1933 Building, Suite 100
1933 Richard Arrington, Jr. Blvd. South
Birmingham, AL 35209-1262
Telephone: 205-939-3900
Fax: 205-939-1300 (Facsimile)
E-mail: will.parks@pagelaw.com

**Serve defendant by certified mail:**
Professional Underwriters Liability Insurance Company
c/o Michael O'Donohue
185 Greenwood Road
Napa, CA 94558