IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY and ) | |
| SKILSTAF, INC., a corporation, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 3:05-cv-545 |
| ) | |
| WILLIS INSURANCE SERVICES OF ) | |
| GEORGIA, INC. (f/k/a WILLIS CORROON ) | |
| CORPORATION OF GEORGIA, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT WILLIS INSURANCE SERVICES OF GEORGIA, INC.'S
MOTION TO DISMISS PLAINTIFF EVANSTON INSURANCE COMPANY'S
<u>FIRST AMENDED COMPLAINT</u>**

Defendant Willis Insurance Services of Georgia, Inc. ("Willis" or "Defendant"), by and through its counsel of record, moves this Court to dismiss the First Amended Complaint filed by Plaintiff Evanston Insurance Company ("Evanston" or "Plaintiff") and each and every count stated therein, separately and severally. As grounds for this motion, Defendant shows unto this Court as follows:

1.   The issues in this case originate from an underlying lawsuit filed in the Superior Court of Burke County, Georgia, styled *Ramstar Mills v. SkilStaf, Inc., et al.*, Civil Action No. 99-v-26 (hereinafter referred to as the "Ramstar Mills Complaint").[1] In the Ramstar Mills Complaint, which is attached to this motion, Plaintiff Ramstar Mills alleged that: "Between January 1996 and January 1999, Ellison, Gregory, Bryant and Patrick, while employed by SkilStaf and subject to SkilStaf's control and supervision,

---

[1] Other Defendants in the lawsuit included Marilynn J. Ellison, Susan Elaine Gregory, Claude Bryant, and Mary Patrick, who were SkilStaf employees leased to Ramstar Mills in accordance with a Client Service Agreement dated July 29, 1991.

manipulated the payroll records sent to SkilStaf and thereby converted $337,232.83 for which SkilStaf wrongfully invoiced [Ramstar Mills] and which Ramstar [Mills] paid to SkilStaf." Ramstar Mills Compl., ¶ 16.[2] The Ramstar Mills Complaint alleged breach of contract, conversion, negligence (of SkilStaf), fraud, and appointment of a receiver. According to Plaintiff's First Amended Complaint in this case, each of the individual Defendants were criminally indicted for the activities described in the Ramstar Mills lawsuit and four of the individual Defendants pled guilty to the charges and were sentenced to pay restitution while on probation. *See* Amended Compl., ¶ 7.

2.   On May 6, 2005, Plaintiffs Evanston and SkilStaf, Inc. ("Skilstaf") (hereinafter jointly referred to as "Plaintiffs") filed this breach of contract lawsuit against Willis alleging, in essence, that because Willis did not put Travelers Casualty and Surety Company of America ("Travelers"), one of SkilStaf's insurers, on proper notice of the Ramstar Mills lawsuit, Travelers denied coverage for Skilstaf's claim, resulting in Evanston, rather than Travelers, paying a portion, if not all, of the settlement of the Ramstar Mills case.[3]   On June 9, 2005, Willis filed a Motion to Dismiss Evanston's

---

[2] A copy of the Ramstar Mills Complaint is attached to this motion. Because the Ramstar Mills Complaint is referenced throughout Plaintiffs' First Amended Complaint and is central to the facts and issues of this case, attaching the Ramstar Mills Complaint should not require the conversion of this motion into a motion for summary judgment. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."); *see also, Deerman v. Federal Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997).

[3] Interestingly enough, at no point in time since the Ramstar Mills lawsuit was filed in 1999, has either Evanston or Skilstaf filed any type of action against Travelers concerning the issues of this case. Further, it is the position of Willis that any payment made by Evanston to settle the Ramstar Mills lawsuit was voluntary, which would preclude any recovery in this case. *See Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So. 2d 534 (Ala. 1995) ("If one party, with full knowledge of all the facts, voluntarily pays money to satisfy a colorable legal demand of another, no action will lie to recover such voluntarily payment, in absence of fraud, duress or extortion.").

original Complaint.[4]

3. After Willis filed its initial Motion to Dismiss, Plaintiffs filed a First Amended Complaint, which added the following two sentences, in an attempt to assert a claim for "subrogation"[5] on behalf of Evanston:

> By virtue of the subrogation provisions of the policy, Evanston became subrogated to certain rights of SkilStaf entitling Evanston to rights of recovery in the event it incurred obligations under the policy insuring SkilStaf. Evanston is a real party in interest herein within the meaning of Rule 17(a) of the Federal Rules of Civil Procedure and has the right to prosecute this claim against Willis by virtue of its status as subrogor.

Amended Compl., ¶ 4. Despite the amendment to its Complaint, Evanston's claims are still due to be dismissed.

---

[4] Willis incorporates by reference in this motion all arguments previously made in its Motion to Dismiss.

[5] The Evanston insurance policy, as it relates to subrogation, provides:

> **Subrogation**: In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and whatever else is necessary to secure such rights. The Insured shall do nothing after the claim to prejudice such rights.
>
> The Company shall not exercise any such rights against any persons, firms, or corporations included in the definition of "Insured." Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any claim brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such Insured.
>
> Any amount so recovered shall be apportioned as follows:
>
>> Any recovery shall first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payments made by the Insured in excess of any deductible(s); third, to any loss and expense payments by any excess carrier on behalf of the insured; fourth, to any loss and expense payments by any primary carrier on behalf of the insured; and last, to repayment of the insured's deductible.

4. In the early case of *Houston v. Branch Bank*, 25 Ala. 250, 1854 WL 272 (1884), subrogation was defined as "the act of putting, by a transfer, a person in the place of another." The doctrine of subrogation is based on the equitable principle that when an entity "discharges an obligation for which another should be held legally liable for payment, then the former stands in the shoes of the obligor and may seek reimbursement against the latter for the damages caused by its allegedly culpable conduct." *American Cyanamid Co. v. United States Fid. & Guar. Co.,* 459 So. 2d 851, 853-54 (Ala. 1984). As a general rule, subrogation is not available to a party discharging a debt in the performance of his own obligation. A right to subrogation exists only when the subrogee pays or discharges a debt for which another is primarily liable. *In re Barnes*, 304 B.R. 489 (Bankr. N.D. Ala. 2004). The equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made that, in fairness, should be borne by the wrongdoer. *International Underwriters/Brokers, Inc. v. Liao*, 548 So. 2d 163, 165 (Ala. 1989).

5. In *North Star Mutual Insurance Co. v. Zurich Insurance Co.*, 269 F. Supp. 2d 1140 (D. Minn. 2003), a case that is very similar to the situation in this case, summary judgment was granted against an insurer (North Star), which had alleged that it had a right of subrogation against an insurance broker (Westrope) following a fire at Schneck Dairies ("Schneck"). North Star, Schneck's insurance company at the time of the loss, paid Schneck's fire claim in its entirety, despite evidence that prior to the loss it had declined to extend future coverage on Schneck and that Westrope had unsuccessfully ventured to procure replacement coverage on Schneck prior to the fire. North Star filed

4

suit alleging several causes of action, one being that North Star was entitled to reimbursement from Westrope on a subrogation theory. North Star unsuccessfully argued that because it paid for the Schneck loss, it should be allowed to pursue the party that caused the loss under a subrogation theory. The court found that, even if Westrope was negligent in not finding additional coverage for Schneck, Westrope's negligence was not the cause of the fire damage, thus no claim for subrogation existed. The court recognized that North Star would have a viable claim for subrogation against the tortfeasor that caused the fire that damaged the Schneck property but not against Westrope because it had no involvement with the fire. In granting summary judgment, the court reasoned that North Star's claims failed because they arose from a duty that Westrope did not owe to North Star and from a loss that did not carry any subrogation rights for North Star as to Westrope.

   6.  In this case, it is conceded that Evanston should be able to "stand in the shoes" of its insured (SkilStaf) to seek reimbursement for payments made under the Evanston insurance policy if a third party was legally responsible for the damages resulting in payment. However, under the facts of this case, any reimbursement should come from the tortfeasor(s) that caused the damage to Skilstaf by taking the payroll money from Ramstar Mills, which would be the individual defendants sued in the Ramstar Mills lawsuit – not Willis. As noted in the First Amended Complaint, four of the five individual defendants in the Ramstar Mills lawsuit were ultimately convicted for criminal activities involving taking payroll money from Ramstar Mills and were sentenced to pay restitution while on probation. By virtue of their conduct, those individual defendants are the wrongdoers who prompted the Ramstar Mills lawsuit and

who caused Evanston to pay a settlement on SkilStaf's behalf, as Evanston was obliged to do under the insurance agreement it had with SkilStaf. Clearly the doctrine of subrogation does not apply to Willis under the facts of this case because it had absolutely no involvement in the activities that resulted in the Ramstar Mills lawsuit being filed and settled.

WHEREFORE, PREMISES CONSIDERED, Willis requests that this Court dismiss Evanston's First Amended Complaint against Willis in its entirety.

Respectfully submitted,

 s/ Rusha C. Smith
Rusha C. Smith (SMI195)
BRADLEY ARANT ROSE &
WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

-and-

George R. Parker (PAR086)
BRADLEY ARANT ROSE &
WHITE LLP
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

Attorneys for Defendant
Willis Insurance Services of
Georgia, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      Tabor R. Novak, Jr., Esq.
      Ball, Ball, Matthews & Novak
      2000 Interstate Park Drive, Suite 204
      Montgomery, AL 36102-2148

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

      None

      Respectfully submitted,

      s/ Rusha C. Smith
      Rusha C. Smith
      Bradley Arant Rose & White LLP
      One Federal Place
      1819 Fifth Avenue North
      Birmingham, AL 35203-2104
      Telephone: (205) 521-8000
      Facsimile: (205) 521-8800
      E-mail: rsmith@bradleyarant.com