IN THE SUPERIOR COURT OF BURKE COUNTY

STATE OF GEORGIA

RAMSTAR MILLS, INC. )
 )
PLAINTIFF, )
 )
VS. )
 ) CIVIL ACTION NO. 99-V-26
SKILSTAF, INC., )
 )
MARILYNN J. ELLISON, )
 )
SUSAN ELAINE GREGORY, )
 )
CLAUDE BRYANT, AND )
 )
MARY PATRICK )
 )
DEFENDANTS. )

FILED
'99 FEB 19 PM 3 00
PANSY D. GODBEE
CLERK OF COURTS
BURKE COUNTY, GA.

## COMPLAINT

NOW COMES, Ramstar Mills, Inc., the Plaintiff herein, ("Ramstar"), and respectfully shows the Court the following facts:

### JURISDICTION AND VENUE

1. This Court has in personam jurisdiction over the Defendant, Skilstaf, Inc. ("Skilstaf"), because Skilstaf is a foreign corporation organized and existing under the laws of Alabama, having its principal office at 860 Airport Drive, Alexander City, Alabama 35010. Skilstaf is qualified to transact business in Georgia, and in connection therewith, has appointed C T Corporation System as its registered agent upon which service of the Summons and copy of this Complaint may be perfected by second original at the office of CT Corporation System, 1201 Peachtree Street, N.E., Atlanta-Fulton County, Georgia 30361.

1

2. This Court has in personam jurisdiction over Marilynn J. Ellison ("Ellison"), because Ellison is a resident of Burke County, Georgia and may be served with a Summons and copy of the Complaint at 148 Jenkins Cemetary Road, Sardis, Georgia 30456

3. This Court has in personam jurisdiction over Susan Elaine Gregory ("Gregory"), because Gregory is a resident of Burke County, Georgia and may be served with a Summons and copy of the Complaint at 1341 Bell Circle, Sardis, Georgia 30456.

4. This Court has in personam jurisdiction over Claude Bryant ("Bryant"), because Bryant is a resident of Screven County, Georgia where upon service of the Summons and copy of this Complaint may be perfected by second original at 890 Winfield Road, Sylvania, Georgia 30467.

5. This Court has in personam jurisdiction over Mary Patrick ("Patrick"), because Patrick is a resident of Burke County, Georgia and may be served with a Summons and copy of the Complaint at her residence in Girard, Georgia 30426.

6. Venue of this action against Skilstaf properly lies in Burke County, Georgia pursuant to Article VI Section II Par. IV and VI of the Constitution of the State of Georgia and O.C.G.A. §14-2-510 because Skilstaf and the other Defendants are jointly and severally liable to Ramstar. Skilstaf maintains an office and transacts business in Burke County, Georgia and the Plaintiff's cause of action is based upon a contract made by Skilstaf in Burke County, Georgia where the contract was to be performed and where the torts alleged in this Complaint occurred.

7. Venue of this action against Ellison, Gregory and Patrick properly lies in Burke County, Georgia pursuant to Article VI Section II Par. VI of the Constitution of the State of Georgia.

8. Venue of this action against Bryant properly lies in Burke County, Georgia pursuant to Article VI Section II Par. IV and VI of the Constitution of the State of Georgia because this Bryant is jointly and severally liable with the other Defendants to Ramstar.

9. This Court has jurisdiction over the subject matter of this action.

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS OF THE COMPLAINT

10. The Plaintiff, Ramstar, a corporation organized and existing under the laws of the State of Georgia, has it principal place of business in Sardis, Burke County, Georgia where Ramstar operates a mill that produces shirts and provides screen printing services.

11. On or about July 29, 1991, Skilstaf and Ramstar entered into a Client Service Agreement pursuant to which Skilstaf agreed to provide Ramstar, and Ramstar agreed to lease from Skilstaf, employees for Job Function Positions at Ramstar. A copy of the Contract is attached hereto as Exhibit "A" and made by reference a part of this Complaint.

12. Skilstaf "... has the exclusive right to determine which of Skilstaf's employees shall be designated to fill Ramstar's Job Function Positions" and Skilstaf has the duty to perform periodic performance evaluations of the Skilstaf employees leased to Ramstar.

13. The individual Defendants, Ellison, Gregory, Bryant and Patrick are employees of Skilstaf and, as such, were leased to Ramstar for use at Ramstar's mill.

14. At all relevant times, the corporate Defendant, Skilstaf leased employees and provided payroll services to Ramstar in connection with Ramstar's business in Burke County, Georgia.

15. Between January 1996 and January 1999, Ellison, Gregory, Bryant and Patrick, while

employed by Skilstaf and subject to Skilstaf's control and supervision, manipulated the payroll records sent to Skilstaf and thereby converted $337,232.83 for which Skilstaf wrongly invoiced Ramstar and which Ramstar paid to Skilstaf.

16. Notwithstanding the fraud and deception practiced by Skilstaf's employees, Skilstaf failed to audit or otherwise investigate the payroll data submitted to Skilstaf by its employees and failed to adopt and follow procedures that would have prevented the conversion of Ramstar's money by Skilstaf and Skilstaf's employees.

## COUNT I
## BREACH OF CONTRACT

17. Ramstar adopts and incorporates by reference each allegation set forth in paragraphs 1 through 16 of the Complaint.

18. Skilstaf breached its Contract with Ramstar by (i) failing to properly hire, evaluate, replace and discipline Skilstaf employees leased by Skilstaf to Ramstar; (ii) allowing Skilstaf employees to convert Ramstar's money; (iii) failing to adopt and enforce procedures to prevent the conversion of Ramstar's money by Skilstaf employees; and (iv) failing to perform periodic evaluations of Skilstaf's employees leased to Ramstar.

19. As a result of Skilstaf's breach of the Contract, Ramstar has sustained damages aggregating $337,232.83 converted by Skilstaf employees for whom Skilstaf is directly liable.

## COUNT II
## CONVERSION

20. Ramstar adopts and incorporates by reference each allegation set forth in paragraphs 1 through 19 of the Complaint.

21. Ramstar is the lawful owner of the $337,232.83 converted by Skilstaf employees and

4

is entitled to possession of that money.

22. The individual Defendants, while employed by Skilstaf, obtained $337,232.83 from Ramstar by deceitful means and artful practices with the intention of depriving Ramstar of its money.

23. As a result of Defendants' conversion of Ramstar's payroll funds, Defendants are jointly and severally liable to Ramstar for $337,232.83.

## COUNT III
## NEGLIGENCE OF SKILSTAF

24. Ramstar adopts and incorporates by reference each allegation set forth in paragraphs 1 through 23 of the Complaint.

25. At all relevant times herein, Ellison, Gregory, Bryant, and Skilstaf were the agents and employees of Skilstaf and subject to Skilstaf's supervision, policies and procedures regarding the performance of their duties at Ramstar.

26. Skilstaf failed to exercise ordinary care in the performance of the duties owed to Ramstar which Skilstaf undertook in connection with Skilstaf's employees leased to Ramstar, including inter alia, Skilstaf's: (i) failure to anticipate conversion and theft of money from Ramstar; (ii) failure to adopt and follow procedures to prevent the conversion and theft of Ramstar's money; (iii) failure to detect and disclose to Ramstar the conversion and theft of Ramstar's money by Skilstaf employees, which conversion and theft by Skilstaf employees were known or should have been known by Skilstaf; (iv) failure of Skilstaf to protect Ramstar from the foreseeable risk of conversion and theft by Skilstaf; (v) failure to exercise a reasonable degree of care, skill and ability on Ramstar's behalf such as is ordinarily exercised under similar

circumstances by others in the same business; and (vi) breach of the legal duty to conform to a standard of conduct imposed by law for the protection of Ramstar against unreasonable risk of harm.

27. This breach of duty by Skilstaf caused Ramstar to suffer damages of $337,232.83.

## COUNT IV
## FRAUD

28. Ramstar adopts and incorporates by reference each allegation set forth in paragraphs 1 through 27 of the Complaint.

29. Skilstaf employees, Ellison, Gregory, Bryant and Patrick, knowingly and willingly conspired among themselves, individually, and as employees of Skilstaf, to conceal from Ramstar the theft and conversion of Ramstar's money for the purpose of defrauding Ramstar to the detriment of Ramstar.

30. That as a result of the theft and conversion both by affirmative act and by silence, Ellison, Gregory, Bryant and Patrick have defrauded Ramstar.

31. Skilstaf employees, Ellison, Gregory, Bryant and Patrick, conspired to defraud Ramstar by the devises, artifices and schemes alleged and are jointly and severally liable to Ramstar for all sums owed to Ramstar.

32. As a result, Ramstar's damages are $337,232.83.

## COUNT V
## APPOINTMENT OF RECEIVER

33. Ramstar adopts and incorporates by reference each and every allegation set forth in paragraphs 1 through 32 of this Complaint.

34. Ramstar, as creditor of Ellison and Gregory, has an equitable interest in the real

property owned by Ellison and Gregory in Burke County, Georgia because there is a manifest danger of loss, destruction or material injury to Ramstar if the property is dissipated or fraudulently conveyed. The legal description of the property owned by Ellison and Gregory in Burke County, Georgia is attached hereto as Exhibits "B" and "C", respectively, and made by reference a part of this Complaint (the "Property").

35. The rights of Ramstar cannot be fully protected without the appointment of a receiver to take possession of, hold and protect the Property.

## COUNT VI
### O.C.G.A. §13-6-11 ATTORNEY'S FEES AND PUNITIVE DAMAGES

36. Ramstar adopts and incorporate by reference each and every allegation set forth in paragraphs 1 through 35 of this Complaint.

37. Skilstaf, by evading and breaching its contractual obligations to Ramstar and by its tortious conduct toward Ramstar has acted in bad faith with a sinister motive not prompted by an honest mistake as to the obligations of Skilstaf to Ramstar, has been stubbornly litigious and has caused Ramstar unnecessary trouble and expense as a result of which Ramstar is entitled to recover reasonable attorney's fees from Skilstaf pursuant to O.C.G.A. §13-6-11 and pursuant to the Contract.

38. Ellison, Gregory, Bryant and Patrick by intentionally defrauding Ramstar and converting Ramstar's money have acted in bad faith with a sinister motive not prompted by an honest mistake as to the obligations of Ellison, Gregory, Bryant and Patrick to Ramstar, have been stubbornly litigious and have caused Ramstar unnecessary trouble and expense as a result of which Ramstar is entitled to recover reasonable attorney's fees from Ellison, Gregory, Bryant and

Patrick pursuant to O.C.G.A. §13-6-11.

39. The Defendants' actions and omissions toward Ramstar show wilful misconduct and an entire want of care which raises the presumption of conscious indifference by the Defendants to the consequences of Defendants' actions and omissions toward Ramstar.

WHEREFORE, Ramstar Mills, Inc. prays for the following relief:

(a) Trial by jury;

(b) Judgment against the Defendants, jointly and severally, for $337,232.83, plus pre-judgment and post-judgment interest;

(c) Reasonable attorney's fees and expenses of litigation as authorized by O.C.G.A. §13-6-11 and the Contract;

(d) Punitive damages in the amount of $500,000.00;

(e) That the Court appoint a receiver to take possession of, hold and protect the Property owned by Ellison and Gregory in Burke County, Georgia;

(f) That Ramstar have such other and further relief as the Court deems appropriate.

William A. Trotter, III
State Bar No. 716800

Mary Helen Story
State Bar No. 685543

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:
WILLIAM A. TROTTER, III, P.C.
3527 Walton Way
Augusta, Georgia 30909
(706)737-3138

SKILSTAF / STAFCO

CLIENT SERVICE AGREEMENT

AGREEMENT, made ___July 29___, 19 _01_, BETWEEN SKILSTAF / STAFCO,
with offices located at Alexander City, Alabama; and

Ricks RamStar, Inc.
Rackley Avenue
P.O. Box 759
Sardis, GA 30456

## 1. STAFFING

(a) Skilstaf / Stafco agrees to provide Client, and Client agrees to lease from Skilstaf / Stafco, staffing for all Job Function Positions listed on Schedule I entitled "Confidential Data Sheet", which is attached hereto and incorporated herein by reference, on the following terms and conditions.

## 2. TERM OF AGREEMENT

This Agreement shall remain in force for a period of one year, from ___OPEN___ to _____. Client may terminate this Agreement at the end of the term by giving thirty (30) days written notice to Skilstaf / Stafco. Skilstaf / Stafco may terminate this Agreement, and all incidental agreements associated with it, without notice, should Client materially breach any of the provisions of this Agreement.

*Ricks RamStar, Inc. will have the right to terminate at any time by written notice by certified mail.

## 3. SERVICE FEES

(a) Client shall pay Skilstaf / Stafco a service fee which is equal to the fee rate percentages specified in Schedule I multiplied times the gross earnings, as adjusted, of the Skilstaf / Stafco employees filling Job Function Positions for Client.

(b) Skilstaf / Stafco may adjust the fee rate percentages for statutory increases in employment taxes, insurance, wage adjustments due to employee performance evaluations, any change in the Job Function Positions required by Client, or upon written notice as provided in Paragraph 16.

(c) Any increase in the fee rate percentages for statutory increases in employment taxes, insurance, wage adjustments due to employee performance evaluations, or any change in the Job Function Positions required by Client will be effective on the day of such increase or change.

(d) Client shall pay Skilstaf / Stafco all service fees due to the first payday following the end of each pay period.

(e) Should payment of any amounts due Skilstaf / Stafco not be made when due, Client shall pay Skilstaf / Stafco an additional fee equal to four percent (4%) of the total monthly service fee for each day the payment is late.

(f) Client agrees to verify all time submissions of all Skilstaf / Stafco employees leased to Client. Client further agrees to be responsible for liability arising from false time submissions.

## 4. INSURANCE

(a) Skilstaf / Stafco shall furnish and keep in full force and effect at all times during the term of this Client Service Agreement, workers' compensation insurance covering all Skilstaf / Stafco employees filling Job Function Positions under the terms of this Agreement. Skilstaf / Stafco shall cause a Certificate of Insurance to be issued naming Client as an additional named insured.

(b) Client shall furnish and keep in full force and effect at all times during the term of this Client Service Agreement, Comprehensive General Liability Insurance on its entire business operations and Comprehensive Automobile Liability Insurance on its entire business operations and Comprehensive Automobile Liability Insurance covering all autos. The policies shall insure bodily injury and property damage liability for a minimum combined single limit of $XXXXXX** (*hundred thousands dollars) and uninsured motorist insurance with a minimum combined single motorist insurance with a minimum combined single limit of $60,000 (sixty thousand dollars). In states where "no fault" laws apply, PIP or equivalent coverage shall be included. Client shall cause its insurer to name Skilstaf / Stafco as an additional named insured and issue a Certificate of Insurance to Skilstaf / Stafco, allowing not less than 30 (thirty) days advanced notice of cancellation or material change.

**Three Hundred Thousand

EXHIBIT "A"

(c) Skilstaf / Stafco shall furnish and keep in full force and effect at all times during the term of this Client Service Agreement, Professional Liability Insurance covering the Skilstaf / Stafco employees who are engaged in the occupations of dental assistants, medical assistants, RN's or LVN's.

## 5. ADMINISTRATION AND SUPERVISION

(a) All individuals leased to Client to fill Job Function Positions are employees of Skilstaf / Stafco. Although Skilstaf / Stafco shall attempt to provide employees who are duly qualified and skilled in the areas in which their services are to be utilized, Skilstaf / Stafco shall not be liable for any loss of revenue, other injury to Client's business, claims or judgements by third parties against Client, except if the employees were negligently selected by Skilstaf / Stafco.

(b) Skilstaf / Stafco shall have the exclusive right to hire, evaluate, replace, discipline, and terminate all employees of Skilstaf / Stafco, at Skilstaf / Stafco's sole discretion. Client has no authority to hire, evaluate, replace, discipline, or terminate any Skilstaf / Stafco employee.

(c) Skilstaf / Stafco has the exclusive right to determine which of Skilstaf / Stafco's employees shall be designated to fill Client's Job Function Positions. Client may refuse to lease any employee so furnished if Client is dissatisfied with such employees performance.

(d) Skilstaf / Stafco will perform periodic performance evaluations of Skilstaf / Stafco employees. Skilstaf / Stafco may use these evaluations to determine wage adjustments. Skilstaf / Stafco may solicit Client's opinion of employee performance as a part of Skilstaf / Stafco's quality assurance program.

(e) Skilstaf / Stafco is responsible for payment of all federal, state, and local employment taxes, and for providing pension plan coverage for all Skilstaf / Stafco employees. Skilstaf / Stafco may provide such other employee benefit plans for its employees as it desires.

(f) Skilstaf / Stafco may designate on-site supervisors from among its employees assigned to fill Job Function Positions for Client. These on-site supervisors shall direct operational and administrative matters relating to service provided by Skilstaf / Stafco employees and shall be under the direct supervision of Skilstaf / Stafco. If Skilstaf / Stafco does not designate an on-site supervisor, Skilstaf / Stafco employees assigned to Client shall be responsible to the Skilstaf / Stafco field representative for that area.

BT. On site supervisors to be Rick & Roberta Feiertag

(g) Skilstaf / Stafco shall determine policies and procedures to be followed by Skilstaf / Stafco employees regarding time and performance of their duties. Client agrees to cooperate with Skilstaf / Stafco in the implementation of Skilstaf / Stafco's employee policies and procedures.

## 6. OVERTIME PAY

(a) Each Skilstaf / Stafco employee assigned to fill a Job Function Position of Client shall be paid overtime at the rate of one and one half times regular pay for all time in excess of forty (40) hours per week. Client agrees to pay the service fee in paragraph 3 above based on this overtime rate if Client requests Skilstaf / Stafco to ask any of its employees to work overtime.

## 7. SAFE WORK ENVIRONMENT

(a) Client agrees that it will comply with all health and safety laws, regulations, ordinances, directives, and rules imposed by controlling federal, state, and local government.

(b) Client agrees to comply at its expense with any specific directives from Skilstaf / Stafco, Skilstaf / Stafco's workers compensation insurer, or any government agency having jurisdiction over the work place, health and safety.

(c) Client shall provide or ensure use of all personal protective equipment, as required by federal, state, or local law, regulation, ordinance, directive, or rule, or as deemed necessary by Skilstaf / Stafco or Skilstaf / Stafco's workers' compensation insurer.

(d) Skilstaf / Stafco and Skilstaf / Stafco's workers compensation insurer, shall have the right to inspect Client's premises. To the extent possible, such inspection shall be scheduled at a mutually convenient time, but may be at any time at Skilstaf / Stafco's sole discretion.

8. HOLD HARMLESS

(a) Client agrees to indemnify, defend and hold Skilstaf / Stafco harmless from any liability, expense (including court costs and attorney's fees), and claims for damage of any nature whatsoever, whether known or unknown, as though expressly set forth and described herein, which Skilstaf / Stafco may incur, suffer, become liable for, or which may be asserted or claimed against Skilstaf / Stafco as a result of the acts, errors or omissions of Client including, without limitation, any violation or breach of paragraph 7 above by Client, any violation of federal, state, or local laws including OSHA, at the work site of Skilstaf / Stafco employees leased to Client, and any violation of federal, state, and local labor laws as affects Skilstaf / Stafco employees leased to Client.

(b) Client agrees to indemnify, defend and hold Skilstaf / Stafco harmless from and against all liability, expense (including court costs and attorney's fees), and claims for damage of any nature whatsoever, whether known or unknown, as though expressly set forth and described herein, which Skilstaf / Stafco may incur, suffer, become liable for, or which may be asserted or claimed against Skilstaf / Stafco as a result of the acts, errors or omissions of employees of Skilstaf / Stafco filling Job Function Positions for Client while such employees are performing services for Client.

(c) Client agrees to indemnify, defend and hold Skilstaf / Stafco harmless from and against all liability expense (including court costs and attorney's fees), and claims for any and all loss of or damage to any of Client's property, real or personal.

9. DEFINITIONS OF MATERIAL BREACH

For purposes of paragraph 2 above, the following, without limitation shall constitute material breaches of this Client Service Agreement by Client: (1) failure to pay a service fee when due; (2) failure to comply with any directive regarding health and saftey from Skilstaf / Stafco, Skilstaf / Stafco's workers' compensation insurer, or any government agency; (3) committing any act that usurps any of Skilstaf / Stafco's rights as the employer of Skilstaf / Stafco's employees leased to Client under this Client Service Agreement; (4) failure to provide any insurance required under this Client Service Agreement.

10. ASSIGNMENT

Client shall not assign this Client Service Agreement or its rights and duties hereunder, or any interest herein, without the prior written consent of Skilstaf / Stafco.

11. INTEGRATION

This Client Service Agreement and Schedule attached constitute the entire agreement between the parties with regard to this subject matter, and no other agreement, statement, promise, or practice between the parties relating to the subject matter shall be binding on the parties. This Client Service Agreement and Schedule attached may be changed only by a written amendment signed by both parties.

12. WAIVER

Failure by either party at any time to require performance by the other party or to claim a breach of any provisions of this Client Service Agreement will not be construed as a waiver of any subsequent breach nor affect the effectiveness of this Client Service Agreement, nor any part thereof, nor prejudice either party as regards any subsequent action.

13. NOTICES

Any notice or demand to be given hereunder by either party to the other shall be effected by personal delivery in writing or by registered or certified mail, postage pre-paid, return receipt requested, and shall be deemed communicated forty-eight (48) hours after mailing. Mailed notices shall be addressed to the party's principal place of business, or as set forth in this Client Service Agreement, but each party may change the address by written notice in accordance with this paragraph.

14. ATTORNEY FEES

In the event that any action is brought by either party hereto as a result of a breach or default in any provision of this Client Service Agreement or to enforce the terms of this Client Service Agreement, the prevailing party in such action shall be awarded reasonable attorney fees and costs in addition to any other relief to which the party may be entitled.

15. GOVERNING LAW

This Client Service Agreement shall be governed by and construed in accordance with the laws in the state of Alabama.

16. PARTIAL INVALIDITY

(a) Should any term, warrant, covenant, condition or provision of this Client Service Agreement be held to be invalid or unenforceable, the balance of this Client Service Agreement shall remain in full force and shall stand as if the unenforceable provision did not exist.

17. PARAGRAPH HEADINGS
   (a) The paragraph headings of this Client Service Agreement are for reference only and shall not be considered in the interpretation of this Client Service Agreement.

Executed at  Sardis, GA

Dated  July 31, 1991
Skilstaf / Stafco

By  _____
    (SIGNATURE)

    Byron Tucker
    (NAME)

    Agent
    (TITLE)

Dated  July 31, 1991

    Ricks RamStar, Inc.
    (CLIENT)

By  _____
    (SIGNATURE)

    Richard A. Feiertag
    (NAME)

    President
    (TITLE)

7/31/91     JUL 22 1991

SCHEDULE 1

SKILSTAF, INC
P.O. BOX 729
ALEXANDER CITY, AL   35010
1 (205) 234-6208
1 (800) 634-2488

July 18, 1991

Ricks Ramstar, Inc.
Rackley Avenue
P.O. Box 759
Sardis, GA   30456

WE PROPOSE THE FOLLOWING MARK-UP

| #8810 - CLERICAL | | #2501 - SEWING PLANT | |
|---|---|---|---|
| FICA | 7.65% | FICA | 7.65% |
| SUI | 2.70% | SUI | 2.70% |
| FUTA | .80% | FUTA | .80% |
| W/C | .60% | W/C | 3.72% |
| | 11.75% | | 14.87% |

* OTHER WEEKLY CHARGES

* PROCESSING FEE - $1.00 PER CHECK
* FEDERAL EXPRESS CHARGE TO SHIP PAYROLL

NOTE:  Skilstaf/Stafco will reimburse Ricks RamStar, Inc. excess FUI and SUI charges, in 1991.

_____     _____
Byron Tucker, Agent                 Richard A. Feiertag, President
Skilstaf/Stafco                     Ricks RamStar, Inc.

LEGAL DESCRIPTION OF PROPERTY
OWNED BY MARILYNN J. ELLISON

All that tract or parcel of land, with improvements thereon, lying situate and being in the 64th G. M. District of Burke County, Georgia about one-half mile East of the Town of Sardis, containing two and one-half (2.5) acres, more or leass, bounded on the East by lands of Loy W. Robinson, on the Southeast and Southwest by other lands of the Dwight Jenkins Estate and on the Northwest by a public road which separates this tract from other lands by the Dwight Jenkins Estate. This tract or land is more particularly described by reference to plat of survey thereof made by Robert L. Bell, Surveyor, dated August 21, 1970, a copy of which is of record in the Office of the Clerk of the Superior Court of Burke County, Georgia in File for plats No. A-2450. This is the same property that was conveyed to Eva Nell J. Ellison by deed of Sherry Jenkins et,al dated June, 1973 and recorded in said Clerk's Office in Deed Book 88, pages 462-3.

ALSO, All that tract, lot or parcel of land, lying and being in the 64th G.M.D., Burke County, Georgia and more particularly shown and described containing 1.45 acres upon a plat of survey entitled Survey for Derrell Ellison and Marilynn Ellison prepared by Steve Bargeron and Associates, Surveyor, Ga. Reg. No. 1871 dated April 23, 1997. Said plat of survey was recorded in the Office of the Clerk of Superior Court of Burke County, Georgia in Plat File No. A-904 on May 1, 1997. Said plat of survey is by reference incorporated herein and made part hereof.

EXHIBIT "B"

## LEGAL DESCRIPTION OF PROPERTY
## OWNED BY SUSAN ELAINE GREGORY

All that tract, lot or parcel of land, lying situate and being in the town of Sardis (old Sardis), 64th District of Burke County, Georgia, and fronting a distance of Sixty (60) feet along the West side of an unnamed street in said Town of Sardis and running back from said street approximately perpendicular lines for a depth of One Hundred (100) feet, said property having a rear width of Sixty (60) feet. Said property is bounded North by property of H. J. Bell and East by a street; South by property of H. J. Bell and West by property of H. J. Bello all of said corners being marked with iron stakes. The northernmost corner of said property conveyed lies 209 feet southwest of an iron stake on line of Willard Godbee. This is a portion of the property conveyed to H. J. Bell by deed of A. J. Herrington, dated November 4, 1954, recorded in the Office of the Clerk of Burke Superior Court in deed Book 59, page 300. This is the same property conveyed to J. R. Clayton and Sybil Bell Clayton by deed of H. J. Bell dated May 26, 1966 recorded in said Clerk's Office in Deed Book 76, page 599.

EXHIBIT "C"