IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY and ) | |
| SKILSTAF, INC., a corporation, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 3:05-cv-545 |
| ) | |
| WILLIS INSURANCE SERVICES OF ) | |
| GEORGIA, INC. (f/k/a WILLIS CORROON ) | |
| CORPORATION OF GEORGIA, INC.), ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO PLAINTIFF EVANSTON INSURANCE COMPANY'S
RESPONSE TO DEFENDANT WILLIS INSURANCE SERVICES
OF GEORGIA, INC.'S MOTION TO DISMISS**

Defendant Willis Insurance Services of Georgia, Inc. ("Willis" or "Defendant"), by and through its counsel of record, replies to Plaintiff Evanston Insurance Company's ("Evanston" or "Plaintiff") Response to Willis' Motion to Dismiss as follows:

1.  In this case, Evanston, one of Plaintiff Skilstaf, Inc.'s ("Skilstaf") insurers, is attempting to pursue a subrogation claim against Willis, Skilstaf's insurance broker. Evanston alleges that because Willis did not put another one of SkilStaf's insurers, Travelers Casualty and Surety Company of America ("Travelers"), on proper notice of the underlying Ramstar Mills lawsuit that Travelers denied coverage for Skilstaf's claim, resulting in Evanston, rather than Travelers, paying a portion, if not all, of the settlement of the Ramstar Mills lawsuit.[1]

---

[1] In the Ramstar Mills lawsuit, it is alleged that "between January 1996 and January 1999, Ellison, Gregory, Bryant and Patrick, while employed by Skilstaf and subject to SkilStaf's control and supervision, manipulated the payroll records sent to Skilstaf and thereby converted $337,232.83 for which Skilstaf wrongfully invoiced [Ramstar Mills] and which Ramstar [Mills] paid to Skilstaf." Ramstar Mills Compl., ¶ 15 (A copy of the Ramstar Mills Complaint is attached to Willis' Motion to Dismiss).

2.  Without citing any authority from Alabama – or from any jurisdiction, other treatise, or secondary support – to support its subrogation claim against Willis, Evanston, in its Response to Willis' Motion to Dismiss ("Response"), claims that it properly "stands in the shoes of its insured [Skilstaf]" and that the third party responsible to it for subrogation is Willis, not the former Skilstaf employees who committed the acts that caused the filing of the Ramstar Mills lawsuit.  Evanston apparently bases its contention that Willis' Motion to Dismiss should fail almost solely on the fact that "Willis makes no contention in its Motion to Dismiss that SkilStaf has failed to articulate a colorable claim."  Evanston's Response at p. 2.[2]  However, contrary to Evanston's assertions that it has stated a claim for relief and that Willis has merely misinterpreted Evanston's claim, the doctrine of subrogation does not apply to Willis under the facts of this case.

3.  Evanston was obligated by its insurance contract with Skilstaf to defend and indemnify Skilstaf in the Ramstar Mills lawsuit.  Willis' alleged breach of its contract with Skilstaf[3] had nothing to do with the activities that initially caused Ramstar Mills to file a lawsuit against Skilstaf.  Nevertheless, in this lawsuit, Evanston attempts to recover "damages" from Willis for monies that Evanston was already obligated to pay to Skilstaf under the provisions of the insurance policy that Evanston issued to Skilstaf.  In so doing, Evanston ignores the fact that the individual defendants listed in the Ramstar Mills lawsuit are the true individuals from which Evanston should be seeking subrogation – not Willis – because those individual tortfeasors

---

[2] For the limited purposes of this reply, Willis acknowledges that because there was a contractual relationship between Willis and Skilstaf at the time of the filing of the Ramstar Mills lawsuit, then Skilstaf's claim against Willis survives a motion to dismiss, and, as such, Willis answered Skilstaf's claim.  However, the mere fact that a Motion to Dismiss was filed as to Evanston, but not Skilstaf, certainly does not, in and of itself, save Evanston's claim from Willis' Motion to Dismiss.

[3] Evanston makes no allegation in its Complaint that there is any type of contractual relationship between Evanston and Willis, which there is not.

directly caused Ramstar Mills to file the underlying lawsuit against Skilstaf and caused Evanston to have to defend and indemnify Skilstaf for the Ramstar Mills lawsuit.

4. In its Response, Evanston basically ignores the holding of a virtually identical case cited in Willis' Motion to Dismiss, styled *North Star Mutual Insurance Co. v. Zurich Insurance Co.*, 269 F. Supp. 2d 1140 (D. Minn. 2003). In *North Star*, summary judgment was granted against an insurer (North Star), which alleged that it had a right of subrogation against the insurance broker (Westrope) following a fire at Schneck Dairies ("Schneck"), the insured. North Star, Schneck's insurer at the time of the loss, paid Schneck's fire claim, despite evidence that prior to the loss North Star had declined to extend future coverage on Schneck and that Westrope had unsuccessfully ventured to procure replacement coverage on Schneck prior to the fire. In discussing North Star's attempted subrogation claim against Westrope, the court reasoned as follows:

> While conceptually, [Westrope's] failure to find an alternative source of insurance coverage caused direct damage to North Star, as North Star had to bear the damage alone, nevertheless, as North Star admits, and is compelled to admit, Westrope owed it no direct duty to secure an alternative insurance policy, and therefore, North Star's claim arises from a duty that Westrope did not owe to North Star, and from a loss which vests, in North Star, no subrogation rights as to Westrope.

*North Star*, 269 F. Supp. 2d at 1154-1155. In the same way that Westrope owed no duty to North Star in that case, Willis owed no direct duty to Evanston to secure alternative insurance coverage for the Ramstar Mills lawsuit. In trying to distinguish the *North Star* case in its Response, Evanston only states, without more, that the *North Star* court "held the insurer, which paid for the damages, had no subrogation against the insured's broker who failed to provide replacement coverage, because the broker's negligence did not cause the fire. That is not the

case here and *North Star* is inapplicable." Evanston's Response at p. 7. Evanston simply disregards the fact that Willis' alleged actions or inactions (even if this Court accepts Evanston's and Skilstaf's contentions that these actions or inactions amount to a breach of contract) did not cause Ramstar Mills' payroll records to be converted and wrongfully invoiced by Skilstaf. Accordingly, based on the *North Star* reasoning,[4] Evanston's subrogation claim should fail as a matter of law because its arises from a duty that Willis did not owe to Evanston and from a loss that did not carry any subrogation rights for Evanston as to Willis.

5. In the last sentence of its Response, Evanston inaccurately concludes that "[c]learly the doctrine of subrogation does apply to Willis under the facts of this case because Willis' breaches of contract with Skilstaf were intimately involved with the activities that **resulted** in the lawsuit being **filed** and **settled** by Skilstaf and Evanston." Evanston's Response at p. 8 (emphasis added). Evanston conveniently omits the fact that no lawsuit would have ever been filed in the first place if the individual defendants (Skilstaf employees) named and held liable in the Ramstar Mills lawsuit had not manipulated payroll records and stolen money from Ramstar Mills. Clearly, Willis, the insurance broker for Skilstaf, had no involvement as it concerns those civil and criminal activities, and Evanston's suggestion otherwise is misleading.[5] While Evanston likely has a valid subrogation claim against the persons involved in those civil and criminal activities, Evanston does not have a valid subrogation claim against Willis.

6. Evanston additionally states that "Willis has asked this court to rule on the merits of the case and sought to submit matters far outside the pleadings for this consideration." Evanston's Response at p. 2. However, the only matters even arguably outside the pleadings that

---

[4] While the *North Star* case applies Minnesota law, the *North Star* court applied basic contract and subrogation principles of law.
[5] Evanston correctly makes no allegation in its Complaint that Willis had anything to do with Skilstaf employees embezzling money from Ramstar Mills.

Willis referred to in its Motion to Dismiss were the Ramstar Mills Complaint, a copy of which was attached, and the subrogation language from Evanston's insurance policy, which was quoted in footnote 5 – both of those items are referred to throughout Evanston's First Amended Complaint and are unquestionably central to Evanston's subrogation claim against Willis. *See Donoghue v. American Nat'l Ins. Co.,* 838 So. 2d 1032 (Ala. 2002) (holding that attaching an insurance policy to a motion to dismiss did not turn the pleading into a summary judgment motion because the complaint specifically referenced the policy, and the purchase and substance of the policy served as the foundation for plaintiff's claims). In *Donoghue*, the Alabama Supreme Court noted that the Alabama Rules of Civil Procedure, while silent on this specific issue, are based on the Federal Rules of Civil Procedure, and many federal appellate courts have interpreted Rule 12(b)(6) to allow courts to consider portions of documents and exhibits as part of a motion to dismiss if they are central to a plaintiff's claim, as is the case here. *Donoghue*, 838 So. 2d at 1036, *quoting Wilson v. First Union Nat'l Bank of Georgia,* 716 So. 2d 722, 726 (Ala. Civ. App. 1998) (federal cases cited in footnote).[6] Therefore, Willis' mere attachment of the Ramstar Mills Complaint and Willis' citation to the subrogation clause in the Evanston insurance policy in its Motion to Dismiss should not convert Willis' Motion to Dismiss to a Motion for Summary Judgment.[7]

WHEREFORE, PREMISES CONSIDERED, Willis requests that this Court dismiss Evanston's First Amended Complaint against Willis in its entirety.

---

[6] *Citing GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (citing authorities from the First, Second, Third, Fourth, Sixth, Ninth, and Eleventh Circuits); *see also Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (documents attached to a motion to dismiss are considered part of the pleadings if referred to in plaintiff's complaint and are central to his or her claim); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (stock-offering memorandum and purchase agreement properly considered on motion to dismiss securities fraud action), *cert. denied,* 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992) (other citations omitted).

[7] Additionally, Evanston has not raised any issue about the correctness or authenticity of the Ramstar Mills Complaint or the wording of the subrogation clause in the Evanston insurance policy.

Respectfully submitted,


 s/ Rusha C. Smith
Rusha C. Smith (SMI195)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

-and-

George R. Parker (PAR086)
BRADLEY ARANT ROSE & WHITE LLP
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

Attorneys for Defendant
Willis Insurance Services of Georgia, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on August 23rd, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Tabor R. Novak, Jr., Esq.
>Ball, Ball, Matthews & Novak
>2000 Interstate Park Drive, Suite 204
>Montgomery, AL 36102-2148

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

>None

>OF COUNSEL

>s/ Rusha C. Smith
>Rusha C. Smith
>BRADLEY ARANT ROSE & WHITE LLP
>One Federal Place
>1819 Fifth Avenue North
>Birmingham, AL 35203-2104
>Telephone: (205) 521-8000
>Facsimile: (205) 521-8800
>E-mail: rsmith@bradleyarant.com