IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION NO. 3:05CV545-SRW ) (WO) |
| WILLIS INSURANCE SERVICES OF GEORGIA, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

In this action, plaintiff Skilstaf, Inc. ("Skilstaf") asserts a breach of contract claim against defendant Willis Insurance Services of Georgia, Inc. ("Willis"). Skilstaf alleges that it contracted with Willis for insurance broker services, and that Willis breached its obligations under that contract by failing to notify one of Skilstaf's insurers, Travelers Casualty and Surety Company of America ("Travelers"), of a lawsuit filed against Skilstaf by Ramstar Mills. Travelers ultimately denied coverage because of untimely notice. According to the complaint, Willis did properly notify plaintiff Evanston Insurance Company ("Evanston") of the Ramstar Mills lawsuit, and Evanston provided a defense to the lawsuit. Skilstaf and Evanston settled the Ramstar Mills lawsuit, both paying funds to Ramstar pursuant to the settlement agreement. Evanston joins as a plaintiff in this action, claiming that it is entitled to pursue a subrogation claim against Willis. Plaintiffs assert that they were forced to assume and discharge certain obligations which Travelers would have been obligated to perform under its policy if Willis had not breached its contract with Skilstaf.

(See First Amended Complaint, Doc. #10).  This action is presently before the court on the motions to dismiss and motion for judgment on the pleadings filed by Willis (Docs. ## 7, 12, 27).  Defendant argues that Evanston's claim is not a proper subrogation claim and that the claims of both plaintiffs are due to be dismissed because they have failed to join a necessary and indispensable party – that is, Travelers – as a party defendant.[1]  Upon consideration of the motions, the court concludes that they are due to be denied.

## Subrogation Claim

A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." Dacosta v. Nwachukwa, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not

---

[1] In a motion to dismiss filed before the First Amended Complaint, Willis argues that Evanston's claim is due to be dismissed because Evanston is neither a party to, nor a third-party beneficiary of, the contract between Skilstaf and Willis (Doc. # 7).  In its second motion to dismiss, filed after the First Amended Complaint, Willis incorporates these arguments (Doc. # 12, p. 3 n. 4). Because it is apparent from the First Amended Complaint that Evanston's claim rests on subrogation and not on a contention that it has an independent breach of contract claim against Willis, the court does not address these arguments.

support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997)(emphasis in original)(citation omitted).

Defendant argues that, on the facts of this case, Evanston's right of subrogation exists only as to claims against the individuals whose wrongful conduct formed the basis for Ramstar Mills' claim against Skilstaf and not as to Skilstaf's claim against Willis.[2] In support of this argument, defendant relies on North Star Mutual Insurance Company v. Zurich Insurance Company, 269 F. Supp. 2d 1140 (D. Minn. 2003). In that case, North Star, the plaintiff insurer, had covered a fire loss for its insured, Schneck Dairies. It brought a claim against an insurance broker, Westrope, alleging that Westrope had negligently failed to place insurance coverage for Schneck with Zurich Insurance Company. Distinguishing a Minnesota case allowing subrogation, the court concluded that North Star could not pursue its negligence claim against Westrope. The court stated:

> [T]he reasoning in Olson would allow North Star to pursue a claim against a tortfeasor, who had caused the fire that damaged the Schneck property, and for which North Star had paid the insurance benefits. Even if Westrope was negligent, as North Star suggests, in not finding additional coverage for the Schneck loss, that negligence was not the cause of the fire damage to the

---

[2] In a footnote, defendant cites Mt. Airy Ins. Co. v. Doe Law Firm, 668 So.2d 534 (Ala. 1995) and argues that "it is the position of Willis that any payment made by Evanston to settle the Ramstar Mills lawsuit was voluntary, which would preclude any recovery in this case." (Doc. # 12, p.2 n.3). However, the complaint alleges that Evanston provided a defense to Skilstaf in the Ramstar Mills lawsuit "pursuant to its policy." (First Amended Complaint, ¶ 12). An obligation performed pursuant to a duty imposed by contract is not "voluntary" so as to bar Evanston's subrogation claim in this action. The insurer's claim in Mt. Airy was not a subrogation claim (see Mt. Airy, 668 So.2d at 537), and its holding regarding the voluntariness of the insurer's payment to its insured is inapplicable to the present case.

> Schneck property. While, conceptually, the failure to find an alternate source of insurance coverage caused direct damage to North Star, as North Star had to bear that damage alone, nevertheless, as North Star admits, and is compelled to admit, Westrope owed it no direct duty to secure an alternate insurance policy, and therefore, North Star's claim arises from a duty that Westrope did not owe to North Star, and from a loss which vests, in North Star, no subrogation rights as to Westrope.

269 F.Supp.2d at 1154-55.

The North Star decision is not controlling, and the court does not find its analysis to be persuasive in resolving the present case. First, the fact that Evanston has subrogation rights against the primary wrongdoers – the Skilstaf employees whose conduct resulted in the Ramstar Mills lawsuit – does not answer the question of whether Evanston may also pursue a subrogation claim arising from Willis' breach of its contractual obligations to Skilstaf. Cf. American Liberty Insurance Company v. AmSouth Bank, 825 So.2d 786 (Ala. 2002)(surety for conservator of estate was not only subrogated to rights of the estate against the conservator for his misappropriation of estate funds but also to the estate's UCC claim against a bank for conversion of a check indorsed by the conservator prior to his appointment). In addition, Evanston's subrogation claim does not rest upon any duty owed by Willis directly to Evanston, but upon a contractual duty owed by Willis to Skilstaf. Cf. Federal Insurance Company v. Travelers Casualty and Surety Company, 843 So.2d 140, 144 (Ala. 2002)("It is well-settled that an insurer that, through subrogation, 'stands in the shoes' of its insured may assert only claims that would be validly asserted by the insured.")(citation omitted); American Cyanamid Company v. United States Fidelity & Guaranty Co., 459 So.2d 851, 853-54 (Ala. 1984)("When one, under a claim of right, discharges an obligation for

which another should be held legally liable for payment, then the former stands in the shoes of the obligor and may seek reimbursement against the latter for the damages caused by its allegedly culpable conduct.").

In Vitkus v. Beatrice Company, 127 F.3d 936 (10th Cir. 1997), the Tenth Circuit considered the claim of an excess insurer (National Union) against the insured's former employer (Beatrice) based on the former employer's breach of its contractual obligation to provide D&O (directors and officers) coverage to the insured (Vitkus).[3]  The underlying lawsuit giving rise to the claims arose out of Vitkus' service – at Beatrice's request – as an outside director on the board of a savings and loan association (Silverado).  After Vitkus left his employment with Beatrice, Silverado failed and was seized by the FDIC, which filed a lawsuit against Vitkus and other Silverado officers and directors.  Beatrice refused to provide a defense.  National Union, the excess insurer, provided a defense under the terms of an endorsement to the policy of Vitkus' new employer.  Vitkus and National Union settled the FDIC's claims, then brought an action against Beatrice seeking defense costs and the amount paid to the FDIC.  Beatrice raised the argument that Willis raises in the present case – *i.e.*, that the insurer could not be subrogated to the insured's claim because it did not cause the underlying loss.  Applying New York law, the Tenth Circuit rejected the argument, stating:

---

[3] See id. at 939 ("Under the merger agreement, Beatrice agreed to maintain D & O coverage, at terms no less advantageous than those in the Lloyd's policy, for a period of six years from the effective date of the merger. Lloyd's canceled its D & O policy shortly after the merger. Thereafter, Beatrice failed to purchase replacement D & O coverage, and thus became a self-insurer, with the scope of its obligations measured by the Lloyd's policy.").

> Beatrice argues that National Union cannot be subrogated to Vitkus's claim against Beatrice because Beatrice did not perform any wrongful act that caused the Silverado loss. This argument misunderstands the doctrine of subrogation. Under New York law, which governs the interpretation of the Emhart policy and which follows the majority rule, "a subrogee is not limited to asserting claims against third-party wrongdoers, but may assert claims against the subrogor's contractual obligor as well." Dome Petroleum Ltd. v. Employers Mut. Liability Ins. Co., 767 F.2d 43, 45 (3d Cir. 1985).
>
> Subrogation is an equitable doctrine available to an insurer who pays its insured's debt even though that debt should have been discharged by a third party. Gerseta Corp. v. Equitable Trust Co., 241 N.Y. 418, 150 N.E. 501, 504 (1926). The insurer "stands in the shoes" of its insured and can assert any rights against the third party that the insured would have been able to assert had the debt not been paid by the insurer. See, *e.g.*, Dome Petroleum, 767 F.2d at 45.

127 F.3d at 942. Thus, the Tenth Circuit allowed National Union to pursue its subrogation claim against Beatrice arising from Beatrice's breach of contract, despite the fact that Beatrice did not cause the Silverado failure. See also American Liberty Insurance, *supra* (allowing subrogation claim against bank that paid a check which was made out to the estate and misappropriated by estate conservator).

Willis has directed this court to no Alabama authority suggesting that Alabama does not also recognize a right of subrogation in the context of a contractual obligation to the subrogor. In the context of a surety's claim, the Alabama Supreme Court has recognized a right of subrogation to a claim arising from a contractual obligation. See National American Insurance Company v. Boh Brothers Construction Company, Inc., 700 So.2d 1363 (Ala. 1997). "Subrogation is an equitable doctrine intended to . . . reimburse the insurer for payments it made that should, in fairness, be borne by another." International

Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala. 1989). In this case, Willis argues, Evanston had an obligation to provide a defense and contribute to the settlement under the terms of its own insurance policy. However, absent Willis' alleged breach, those costs could have been shared by Travelers.[4] The fact that Evanston paid pursuant to its own contractual obligation to do so does not constitute a bar to its subrogation claim.

Defendant's arguments as to the sufficiency of Evanston's subrogation claim are without merit, and its Rule 12(b)(6) motion is due to be denied.

### Rule 19 Motion

In a motion filed on February 8, 2006 (Doc. # 27), Willis argues that Evanston's claims are due to be dismissed and it is entitled to judgment on the pleadings as to Skilstaf's claims because of plaintiffs' failure to join Travelers as a party defendant. Willis contends that Travelers is a "necessary and indispensable" party in this action and that plaintiffs' failure to join it requires dismissal of their claims.

> Rule 19 provides a two-part test for determining whether an action should proceed in a non-party's absence. The first question is whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations. See Fed. R. Civ. P. 19(a)(1)-(2). Only if we can answer this threshold question "yes," and if the nonparty cannot be joined (say for jurisdictional reasons), do we go to step two. See Temple v. Synthes Corp., Ltd., 498 U.S. 5, 8, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990). Step two asks us to determine, "in equity and good

---

[4] This will depend upon the provisions of each of the insurance policies. Cf. State Farm Mutual Auto Ins. Co. v. General Mutual Ins. Co., 210 So.2d 688 (Ala. 1968)(apportioning liability between two insurers which covered the same risk). Evanston will, of course, have to prove that Travelers would have been liable under its policy in order to establish its damages.

>     conscience," whether the action should go forward as cast.  See Fed. R. Civ.
>     P. 19(b).

City of Marietta v. CSX Transportation, Inc., 196 F.3d 1300 (11th Cir. 1999).  Defendant argues that Travelers is a necessary party pursuant to Rule 19(a)(2)(i) – *i.e.*, that Travelers has an interest in this litigation and "'disposition of the action in [Travelers'] absence may (i) as a practical matter impair or impede [Travelers'] ability to protect that interest.'" (Doc. # 27, pp. 2-3).  Defendant argues that a decision by this court regarding the scope of coverage or enforceability of the Travelers policy "could detrimentally affect Travelers' ability to prosecute or defend any subsequent claim and/or litigation involving the same type of policy."  (Doc. # 27, p. 3).  Plaintiffs point out that they do not contend that Travelers breached the policy and, further, that a breach of contract claim is now barred by the statute of limitations.  (Doc. # 30, p. 6).[5]  Thus, Travelers does not have a direct financial interest in the outcome of this litigation.

    Defendant relies on Ranger Insurance Company v. United Housing of New Mexico, Inc., 488 F.2d 682 (5th Cir. 1974) for the proposition that the *stare decisis* effect of a judgment may be a sufficient basis for finding joinder of a party to be necessary.  (Doc. # 27, pp. 3-4).  Ranger arose out of a fatal crash of the insureds' airplane.  The insurer, Ranger, filed a declaratory judgment action against the insureds seeking to establish that it was not liable under its insurance contract for claims arising from the airplane crash.  The former

---

[5] According to the complaint, Travelers denied coverage under the policy on July 20, 1999. (Complaint, ¶ 11).

Fifth Circuit upheld the district court's dismissal of the action for failure to join claimants who were seeking damages from the insureds. In determining that dismissal was warranted,[6] the district court relied on the possibility that the claimants would obtain a judgment against the insureds. The court reasoned that it was "'nonsensical to suggest that a declaration . . . of liability or non-liability will have no practical effect upon the [claimants].'" Id. at 683. By the time of the Fifth Circuit's decision on appeal, the claimants had, in fact, obtained a judgment in their favor against one of the insureds. The court stated:

> Conceivably the district court could shape relief to avoid seriously prejudicing the absent claimants, possibly by enjoining appellant from raising its judgment of noncoverage as a defense to a direct action. However, at this point the basic difficulty with [Ranger's] case becomes apparent – either a judgment might prejudice the claimants, violating the first Rule 19(b) factor, or it would not be adequate to finally resolve the issue, violating the third Rule 19(b) factor. Neither alternative is acceptable.

Id. at 684. The interest requiring protection in Ranger was significantly more substantial than that argued by defendant in the present case. The Ranger district court would have been issuing a decision regarding the scope of insurance coverage on the claimant's pending claims against the insureds. In contrast, defendants here suggest only that this court's interpretation of the terms of the policy might be cited in a future case, not involving the incidents or parties giving rise to this action. This court's determination regarding any coverage that would have been required under the particular policy as applied to the particular facts presented in this case (had notice been timely) presents, at best, an attenuated

---

[6] Joinder of the claimants would have destroyed diversity jurisdiction. 488 F.2d at 682-83.

interest that is insufficient to support a finding that Travelers is a necessary party in this action. Cf. Atlantis Development Corporation v. United States, 379 F.2d 818, 826 (5th Cir. 1967)("[Rule] 24(a)(2)[7] is in the conjunctive requiring both an interest relating to the property or transaction and the practical harm if the party is absent. This sharply reduces the area in which *stare decisis* may . . . supply the element of practical harm.").

The court cannot conclude that proceeding with this action in the absence of Travelers "will impede . . . [its] protection of an interest at stake," (City of Marietta, *supra*) and, accordingly, defendant's motion to dismiss and for judgment on the pleadings (Doc. # 27) is due to be denied.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant's motions to dismiss (Docs. ## 7, 12) and its motion to dismiss and for judgment on the pleadings (Doc. # 27) are DENIED.[8]

---

[7] The Fed. R. Civ. P. 24(a)(2) standard for intervention of right mirrors the standard in Fed. R. Civ. P. 19(a)(2)(i).

[8] In view of the stay imposed by the court on January 23, 2006, a new scheduling order will be entered.

Done, this 16th day of March, 2006.

        /s/ Susan Russ Walker
        SUSAN RUSS WALKER
        UNITED STATES MAGISTRATE JUDGE